Opinion by Judge JED S. RAKOFF; Dissent by Judge WALLACE.
OPINION
RAKOFF, Senior District Judge:
The issue in this case is whether, under the Mandatory Victims Restitution Act of 1996 (“MVRA”), a district court impermissibly delegates its obligation to set a resti *1044 tution payment schedule when it orders “immediate” payment with the expectation that the Bureau of Prisons (“BOP”) will work out a payment schedule with the prisoner pursuant to the Inmate Financial Responsibility Program (“IFRP”). We hold that where the sentencing court has failed to consider whether the defendant has the financial resources to pay restitution immediately, ordering immediate payment impermissibly delegates to the BOP the court’s obligation to set a payment schedule.
BACKGROUND
On December 9, 2002, petitioner Jack Richard Ward was sentenced in the Eastern District of California to 300 months’ imprisonment and 3 years’ supervised release after being convicted of one count of attempted Armed Bank Robbery and nine counts of Armed Bank Robbery. In addition to his prison term, the sentencing court ordered Ward to pay a $1,000 Crime Victim Fund Assessment and $27,885 in restitution to the crime victims. The “Schedule of Payments” portion of the court’s judgment stated that the Crime Victim Fund Assessment and restitution were due and payable “immediately.” Ward was then sent for incarceration to the Federal Correctional Institution in Phoenix, Arizona, where he was voluntarily employed by Unicor (the prison employment system). See United States v. Ward, No. CR 02-5231 AWI, 2008 WL 5220959, at *1 (E.D.Cal. Dec. 12, 2008). In accordance with standard practice, portions of Ward’s Unicor pay was deducted and applied to his restitution obligation.
Ward subsequently filed motions in the California district court that sentenced him, requesting deferral and/or reduction in his restitution payments. The California district court construed this as a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, and amendments to that motion. Id. at *1-2. The court then concluded that its order for “immediate” repayment of restitution impermissibly delegated to the BOP the court’s obligation to set a repayment schedule, and ordered the BOP to cease collecting money from Ward for payment of restitution until the court issued a new restitution order. Id. at *2-4. After the Government moved for reconsideration, however, the district court concluded that because neither 28 U.S.C. § 2255 nor 18 U.S.C. § 3664(k) allows a district court to rule on the legality of a restitution order, and because Ward was incarcerated in Arizona, it lacked jurisdiction to issue its prior Order, and accordingly vacated the Order. See United States v. Ward, No. CR 02-5231 AWI, 2009 WL 160690, at *1-2 (E.D.Cal. Jan. 22, 2009) (noting § 3664(k) allows district court to change a restitution schedule based only on changed financial circumstances and citing United States v. Gross, 307 F.3d 1043, 1044 (9th Cir.2002)).
After the termination of his California district court proceeding, Ward initiated this habeas proceeding pursuant to 28 U.S.C. § 2241 in the District of Arizona, claiming:
The BOP lacks a lawful order of restitution from the district court in accordance with the Mandatory Victims Restitution Act of April 1996, to collect restitution from the Petitioner during his incarceration. The BOP, without a lawful order of restitution, cannot force the Petitioner to participate in the Inmate Financial Responsibility Program and must place Petitioner on “no obligation” status.
The Government argued that Ward’s habeas petition should be denied because Ward had not exhausted his administrative remedies and because his claim was meritless. Ward argued that the district court should exercise its discretion to hear his petition *1045 because any attempt to exhaust his administrative remedies would be futile.
In a Report and Recommendation, the magistrate judge recommended the district court deny the petition, concluding that Ward had not exhausted his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). See Ward v. Chavez, No. 2:09-cv-00246-GMS, Dkt. No. 11 (DAriz. May 26, 2009). The district court, after considering Ward’s objections to the R & R and the Government’s responses, adopted the R & R in part. Ward v. Chavez, No. CV-09-00246-PHX-GMS, 2009 WL 2753024 (D.Ariz. Aug. 27, 2009). The district court agreed with Ward that the PLRA’s exhaustion requirement does not apply to § 2241 habeas petitions, but declined to waive the judicially-created exhaustion requirement on the grounds of futility. Id. at *2-4 (“Petitioner has failed to show sufficient evidence that his exhaustion of the BOP appeals process would have been futile.”).
Notwithstanding its refusal to waive the exhaustion requirement, the district court then addressed the merits of Ward’s claim and found it meritless for two reasons. First, the court concluded that Ward was not being forced to participate in the IFRP, as it is a voluntary program that Ward chose to participate in and could exit at anytime. Id. at *5. Second, the court concluded that since the sentencing court had not required the BOP to set a schedule of payments, it had not delegated its authority to set a restitution schedule to the BOP. Id. at *6. Because the sentencing court neither directed the BOP to set a schedule nor required Ward to participate in the IFRP, the court concluded that the cases Ward relied on did not apply to his claim. Id. Ward appeals to this Court from this decision.
DISCUSSION
Before considering the merits of Ward’s petition, we first address the issue of exhaustion. As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241. Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir.2001), abrogated on other grounds, Fernandez-Vargas v. Gonzales, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006). This exhaustion requirement is subject to waiver in § 2241 cases because it is not a “jurisdictional prerequisite.” Id. Typically, exhaustion can be waived “if pursuing those [administrative] remedies would be futile.” Fraley v. U.S. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir.1993).
Here, Ward exhausted only step one of the three-step BOP administrative remedy system: he filed a formal administrative grievance with the Warden, which the Warden denied. 28 C.F.R. § 542.10 et seq.[1] Ward argues, however, that any administrative appeal would have been futile, as the denial was based on an official policy of the BOP: the IFRP. See Sours v. Chavez, No. 2:08-cv-01903-SRB, Dkt. No. 22, slip op. at *2-3 (D. Ariz. June 17, 2009) (report and recommendation) (concluding exhaustion not required where request for relief denied based on official BOP policy), as cited in Sours v. Chavez, No. CV08-1903-PHX-SRB, 2009 WL 2714028, at *1, 2009 U.S. Dist. LEXIS 76965, at *2-3 (DAriz. Aug. 26, 2009). Sours, like this case, involved a petitioner seeking to set aside a restitution order that improperly delegated scheduling au *1046 thority to the BOP. Sours, No. 2:08-cv-01903-SRB, Dkt. No. 22, slip op. at *1-2. In waiving exhaustion, the Sours court relied on our opinion in Fraley, which held there was futility where the petitioner’s claim was denied based on official BOP policy. Fraley, 1 F.3d at 925. The petitioner in Sours, unlike Ward, had gone through three out of four levels of BOP review, Sours, No. 2:08-cv-01903-SRB, Dkt. No. 22, slip op. at *3-4. But it was the reliance on the “official policy” that led to a finding of futility in Sours (and Fraley ), and the Sours court expressly noted that the level of Sours’s exhaustion simply showed his petition was even more futile than Fraley, where the prisoner had gone through only one level of review. Sours, No. 2:08-cv-01903-SRB, Dkt. No. 22, at *3-4.
Because of the existence of official BOP policy — the IFRP — exhaustion would be futile here, as it was in Sours and Fraley. The district court incorrectly dismissed the probative value of the BOP’s return to collecting restitution from Ward after the sentencing court vacated, for lack of jurisdiction, its order that granted Ward relief. Ward, 2009 WL 2753024, at *3-4. The fact that the BOP resolved to continue collecting restitution from Ward after the sentencing court determined its own restitution order was unlawful, before then vacating for lack of jurisdiction after the Government moved for reconsideration, shows a return by the BOP to the official policy of the IFRP. It also shows that any further appeal by Ward would unquestionably have been denied. Accordingly, the district court erred in not waiving the exhaustion requirement, as Ward’s exhaustion of his administrative remedies would have been futile.
Turning to the merits of Ward’s petition, the MVRA directs that a sentencing court “shall ... specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid.” 18 U.S.C. § 3664(f)(2). We have previously held that the district court’s statutory responsibility to set the restitution payment schedule is “non-delegable.” United States v. Gunning (Gunning I), 339 F.3d 948, 949 (9th Cir.2003); United States v. Gunning (Gunning II), 401 F.3d 1145, 1149 (9th Cir.2005). “[T]he district court simply does not have the authority to delegate its own scheduling duties — not to the probation office, not to the BOP, not to anyone else.” Gunning II, 401 F.3d at 1150.
Here, Ward argues the sentencing court impermissibly delegated its authority to the BOP in effect by ordering payment of restitution “immediately” without specifying any payment schedule, leaving him no option but to participate in a BOP prison work program in order to attempt to comply with the sentence in good faith (given his lengthy sentence), thus subjecting him to the IFRP. In Gunning I, the district court ordered restitution payable “immediately,” with any amount unpaid after the defendant’s release “to be paid during the period of supervision as directed by a U.S. probation officer.” 339 F.3d at 950. We held this order assigned to the probation office “full control of subsequent payment,” and thus impermissibly delegated the district court’s authority to probation. Id. On remand, the district court ordered restitution payable “immediately,” and additionally ordered that “(1) during the time of [the defendant’s] imprisonment, it was to be paid through the BOP Inmate Financial Responsibility Program (IFRP), and (2) during the period of supervised release it was to be paid in monthly installments of not less than ten percent of Gunning’s gross income, commencing thirty days after his release from imprisonment.” Gunning II, 401 F.3d at 1147 (summarizing district court’s order). We again held that the district court impermissibly delegated *1047 its authority, this time to the BOP. Id. at 1150. In so holding, we explained that, “because restitution was due immediately, there was a period between sentencing and supervised release — the period of Gunning’s incarceration. That had to be provided for. At that point, the district court overlooked the spirit of our decision and delegated the non-delegable to the BOP for the incarceration period.” Id. (emphasis supplied).
In United States v. Lemoine, 546 F.3d 1042 (9th Cir.2008), we subsequently clarified the demarcation between impermissibly delegating authority to the BOP and the BOP’s independent power to administer the IFRP. Lemoine’s order of restitution required him to pay restitution during his imprisonment “at the rate of not less than $25 per quarter, and pursuant to the Bureau of Prisons’ Inmate Financial Responsibility Program.” Id. at 1044 (emphasis supplied). Lemoine voluntarily enrolled in the IFRP, and the BOP required Lemoine to pay restitution at a rate of $132 per month, leading to Lemoine challenging the BOP’s authority to require payment higher than the court’s schedule. Id. Because the district court set a schedule of at least $25 per quarter, we upheld this restitution order. Id. at 1047-50. Rejecting Lemoine’s arguments that he was “forced” to participate in the IFRP because he would be denied certain privileges if he had refused to join, we held “that, where the district court has properly set a restitution repayment schedule as required under the MVRA, the BOP has the authority to encourage voluntary payments in excess of those required under the court’s judgment by conditioning the receipt of certain privileges during the term of imprisonment on the inmate’s participation in the IFRP.” Id. at 1050.
Since Lemoine forecloses Ward’s argument that he is being “forced” to participate in the voluntary IFRP, the issue in this case thus turns on whether by ordering “immediate” payment of restitution, the district court failed in effect to set a restitution repayment schedule and instead delegated its statutory duty to the BOP. Dicta in both Gunning II and Lemoine suggest that “immediate” repayment does not satisfy the MVRA’s requirement that the district court “shall ... specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid.” 18 U.S.C. § 3664(f)(2). Lemoine noted that “[t]he First, Second, Third, Sixth, Eighth, Tenth, and Eleventh Circuits have all held that a district court must set a restitution repayment schedule, and those that have reached the issue have concluded, as we did in Gunning II, that a court may not simply order immediate payment and leave to the BOP the task of setting the actual schedule.” 546 F.3d at 1048 n. 4 (citations omitted).[2] Indeed, the sentencing court in Ward’s case agreed, before it later dismissed Ward’s petition for lack of jurisdiction.
The court is informed that, as in the present case, courts of this district have commonly imposed restitution “due immediately” as part of sentences where the defendant is committed to a term of imprisonment. The expectation has been that BOP and/or Probation will work out the details of payment. Pursuant to the foregoing discussion [of Gunning I and II and Lemoine ], it is now apparent to the court that the usual *1048 form of imposition of restitution in this district constitutes an impermissible delegation of authority to either BOP or Probation.
United States v. Ward, 2008 WL 5220959, at *3.
The Government argues that Gunning II can be distinguished because the district court in that case ordered restitution to be paid according to the IFRP, impermissibly delegating the court’s authority, whereas here the court did not explicitly order payment according to the IFRP. 401 F.3d at 1147. But given Lemoine, we cannot fairly limit Gunning II’s applicability to cases where the court explicitly orders participation in the IFRP. The order in Lemoine directed restitution payment of at least $25/quarter, to be paid “pursuant to” the IFRP, which the district court held “did not mandate” Lemoine’s participation in the IFRP. 546 F.3d at 1044. In upholding this- order, we relied on the “proper” setting of a restitution payment schedule by the district court (at least $25/quarter) in holding that “the BOP has the authority to encourage voluntary payments in excess of those required under the court’s judgment.” Id. at 1050. Unless the district court sets a “proper” schedule, the order is not valid, regardless of whether it explicitly mandates participation in the IFRP.
This leads to the question of what a “proper” restitution order entails. The district court in this case held that a restitution order requiring payment “due immediately” is a valid order in compliance with the MVRA. Ward v. Chavez, No. CV-09-00246-PHX-GMS, 2009 WL 2753024, at *6 (D.Ariz. Aug. 27, 2009).[3] Likewise, the Government argues that in United States v. Martin, we previously held that a restitution order requiring immediate payment is a valid order. See United States v. Martin, 278 F.3d 988, 1006 (9th Cir.2002). Martin, however, is inapposite to this case, as we did not there address whether “immediate” payment of restitution delegated scheduling authority to the BOP or probation, but rather concluded that “[t]he court had before it information regarding Defendant’s financial resources that it presumably considered and found insufficient to warrant periodic payments.” Id. at 1006. In so holding, we found that the information available to the sentencing court was sufficient to discharge the court’s responsibilities under the MVRA, including the requirement that the sentencing court consider the defendant’s financial position in determining a restitution payment schedule. See id.; 18 U.S.C. § 3664(f)(2).
By contrast, the majority of our sister circuits to have considered the issue have concluded that where the defendant lacks the financial resources to make immediate payment, a sentencing court may not order immediate payment because it implicitly delegates to the BOP or the probation office the district court’s obligation to schedule payment. For example, in United States v. Prouty, the Eleventh Circuit *1049 concluded that, since setting the payment schedule is a “core judicial function,” a restitution schedule ordering “immediate” payment “with an informal understanding that the probation office shall set a repayment schedule” impermissibly delegated the district court’s duty. United States v. Prouty, 303 F.3d 1249, 1254-55 (11th Cir.2002), cited with approval in Lemoine, 546 F.3d at 1048 n. 4. The Third Circuit, endorsing Prouty, has also taken the position that the district court may not simply order immediate payment of restitution with the expectation that the BOP or Probation will set the details of payment. See United States v. Corley, 500 F.3d 210, 225-27 (3d Cir.2007), vacated and remanded on other grounds by 556 U.S. 303, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009), cited with approval in Lemoine, 546 F.3d at 1048 n. 4. The Third Circuit noted that since the “District Court apparently understood that Corley could not make immediate payment in full, it was required under § 3664(f)(2) to set a different schedule of payments .... [0]rders directing ‘immediate’ payment under such circumstances are indistinguishable in principle from outright delegations of authority to the Bureau of Prisons.” Id. at 226-27.
The Eighth Circuit also agrees. In United States v. McGlothlin, the district court ordered restitution payable “immediately,” but refused to set a payment schedule at sentencing and instead said that he would “let the Bureau of Prisons tackle that problem.” United States v. McGlothlin, 249 F.3d 783, 785 (8th Cir.2001), cited with approval in Lemoine, 546 F.3d at 1048 n. 4. The Court of Appeals reversed, holding that the district court could not leave to the BOP its statutory duty to set a payment schedule, and that the district court must set a “detailed payment schedule at sentencing.” Id. Likewise, the Second Circuit in United States v. Kinlock rejected a restitution order that simply ordered payment “immediately,” holding that “[w]hen restitution cannot be paid immediately, the sentencing court must set a schedule of payments for the terms of incarceration, supervised release, or probation.” United States v. Kinlock, 174 F.3d 297, 301 (2d Cir.1999), cited with approval in Lemoine, 546 F.3d at 1048 n. 4.[4] Additionally, the First, Sixth, and Tenth Circuits have endorsed this approach, albeit, like Lemoine, in dicta or in factual circumstances not entirely similar to the instant case. See United States v. Metric, 166 F.3d 406, 409 (1st Cir.1999); United States v. Davis, 306 F.3d 398, 426 (6th Cir.2002); United States v. Overholt, 307 F.3d 1231, 1256 (10th Cir.2002), all cited ivith approval in Lemoine, 546 F.3d at 1048 n. 4. But see United States v. Sawyer, 521 F.3d 792, 796 (7th Cir.2008) (concluding that court ordered payment schedules “need not, and as a rule should not, begin until after the defendant’s release from prison,” and that “[pjayments until release should be handled through the [IFRP] rather than the court’s auspices”); United States v. Miller, 406 F.3d 323 (5th Cir.2005) (holding no error to order immediate payment where selling defendant’s assets would cover majority of restitution, followed by monthly schedule after release from prison); United States v. Dawkins, 202 F.3d 711, 716 (4th Cir.2000) (upholding district court’s decision to order restitution payment pursuant to IFRP while incarcerated).
Where, as in Martin, the court determines that the defendant’s financial resources are sufficient such that periodic *1050 payments are unwarranted, there is no other entity the court delegates its responsibility to in ordering that restitution should be paid immediately, and that restitution order is not unlawful. But where the defendant has insufficient financial resources to make immediate repayment, the district court — not BOP, not Probation— must set a repayment schedule in the judgment of conviction in order to discharge its responsibilities under the MVRA.
Further, where the court has not even considered the defendant’s financial position and simply orders “immediate” payment, “[t]he expectation has been that BOP and/or Probation will work out the details of payment.” United States v. Ward, No. CR 02-5231 AWI, 2008 WL 5220959, at *3; see also Prouty, 303 F.3d at 1254-55 (holding immediate repayment implicitly delegates such authority). This is insufficient under the MVRA, which directs that the district court “shall ... specify in the restitution order ... the schedule according to which[ ] the restitution is to be paid, in consideration of’ the defendant’s financial circumstances. 18 U.S.C. § 3664(f)(2). Ordering “immediate” payment when the sentencing court does not know whether it is possible for the defendant to make immediate payment and instead leaving it to the BOP to “work out the details” does not “specify” the schedule of payment “in consideration of’ the defendant’s financial circumstances. It is true, as the dissent notes, that under 18 U.S.C. § 3572 the default payment option for restitution is immediate repayment, unless the court orders periodic payment in “the interest of justice.” Dissent at 1054-55; see Martin, 278 F.3d at 1006 (describing it as the “general rule”). But section 3572 is modified here by section 3664, which applies specifically to a mandatory restitution order imposed under the MVRA, and which mandates that the district court specify the payment schedule in the restitution order “in consideration of” the defendant’s financial circumstances. 18 U.S.C. § 3664 (emphasis supplied). It is here that the sentencing court’s order failed — as the sentencing court itself subsequently acknowledged — by simply setting “immediate” payment and leaving it to the BOP to “work out the details.” United States v. Ward, 2008 WL 5220959, at *3.
For a restitution order to be lawful, therefore, § 3664 requires that the district court set a schedule in consideration of the defendant’s financial resources. If the court considers the defendant’s financial resources and concludes that periodic payments are unwarranted “in the interest of justice,” the order is lawful, as we concluded in Martin. If, however, the district court simply orders immediate repayment and leaves it to another agency, like the BOP, to actually set the payment schedule that the statute obligates the court to determine, that order is unlawful, as the district court has abdicated in its duty to set the schedule “in consideration of’ the financial circumstances of the defendant. The dissent argues that the record does not demonstrate that the sentencing court failed to consider Ward’s financial circumstances in ordering that restitution of approximately $29,000 be paid immediately. Dissent at 1055-56. We disagree. Here, the sentencing court acknowledged that, in Ward’s case (and in others before that court), it had ordered immediate payment of restitution, with the expectation that the BOP would “work out the details of payment.” United States v. Ward, 2008 WL 5220959, at *3. The court concluded that pursuant to the Gunning cases and Lemoine its “usual practice” constituted an impermissible delegation to the BOP. Id. The court then ordered the BOP to cease collecting restitution payments, id. at *4, before later vacating that order for lack of jurisdiction. United States v. Ward, 2009 WL 160690. We think it is clear that the *1051 district court acknowledged it had set the order of “immediate payment” without regard to the defendant’s financial circumstances, and left it to the BOP to take those circumstances into account in “working] out the details.” It appears to us unreasonable to read the sentencing court’s opinion, and yet conclude, as the dissent does, that whether the sentencing court considered the defendant’s financial circumstances is not in the record, and further “assume” that the district court set the schedule of paying $29,000 immediately “in consideration of’ Ward’s financial circumstances. Dissent at 1054-55, 1055— 56; see also Trigueros v. Adams, 658 F.3d 983, 987 (9th Cir.2011) (taking judicial notice of state court documents that were “directly related” to the habeas petition presented (quoting United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir.1992))).[5]
The dissent also argues that this is not a “delegation” of the sentencing court’s responsibility to set a schedule, since the Government does not have judicial imprimatur to set a schedule that the district court is required to enforce, but must instead move for sanctions when the defendant defaults by failing to make immediate payment of the entire restitution amount. Dissent at 1056-57,1060-61; see also Sawyer, 521 F.3d at 794-96. But that a schedule set by the BOP is not legally binding under the MVRA does not address the district court’s failure to fulfill its MVRA obligations by leaving it to the BOP to “work out the details.” The BOP may move for sanctions, or it may instead choose to set an informal schedule, holding the threat of sanctions over the defendant. That power to enforce gives the BOP the power to dictate the terms of the defendant’s payment of the restitution order. It is expressly contrary to the MVRA’s direction that the district court “shall,” in the judgment of conviction, set the payment schedule “in consideration of’ the defendant’s financial circumstances to simply order immediate payment. See also Corley, 500 F.3d at 226 (comparing MVRA with its predecessor, the Victim and Witness Protection Act of 1982, and noting that, unlike the VWPA, the MVRA requires the district court to specify the payment schedule in the judgment). As our sister circuits have explained, this implicit delegation of authority is “indistinguishable” from an explicit order directing the BOP to set the schedule. Id. at 226-27 (citing Prouty, 303 F.3d at 1255).
Accordingly, because the sentencing court in Ward’s case did not set forth a proper payment schedule in the restitution order, that order is unlawful, and the BOP therefore lacks the authority to collect restitution payments from Ward through the IFRP. See, e.g., Ybarra v. Smith, No. CV-09-1447-PHX-DGC (JRI), 2010 WL 5361833, at *2, 2010 U.S. Dist. LEXIS 135695, at *5-6 (D.Ariz. Dec. 20, 2010) (“Without a proper order, the BOP does not have the authority to require a schedule of restitution payments collected while Petitioner is participating in the IFRP.” *1052 (internal quotation marks and citation omitted)).[6]
CONCLUSION
In sum, we find that a sentencing court must consider the defendant’s financial resources in setting a restitution payment schedule, and, if the defendant is unable to pay restitution immediately, the court cannot simply order “immediate” repayment and leave the details of the actual payment schedule to the BOP or Probation. Applying that standard to this case, we find that the restitution order against petitioner Ward impermissibly delegates to the BOP the court’s obligation to set a payment schedule, and therefore, that the BOP lacks the authority to collect restitution payments from the petitioner. Accordingly, we reverse the district court’s ruling and remand to the district court for further proceedings consistent with this opinion.
REVERSED and REMANDED.

. Although Ward does not dispute that he withdrew his appeal of the Warden's denial of his grievance, he asserts that he did so because the sentencing court originally granted him the relief he had sought, prior to reconsidering its order.

. In Lemoine, we also noted that, "[i]n contrast, the Fourth, Fifth, and Seventh Circuits have held that a judgment of conviction need not contain a schedule of restitution payments to be made during the period of incarceration.” 546 F.3d at 1048 n. 4 (citations omitted).

. Because the district court found that Ward's petition for a writ of habeas corpus did not assert that the sentencing court erred in ordering immediate repayment it spent only a page addressing this argument, relying on United States v. Young, 533 F.Supp.2d 1086, 1088 (D.Nev.2007). Young, however, predates Lemoine and is contrary to it to the extent it relies on Seventh Circuit authority that Lemoine disclaimed. See Lemoine, 546 F.3d at 1048 n. 4 (citing United States v. Sawyer, 521 F.3d 792, 796 (7th Cir.2008)). The district court seems to have taken an unduly narrow view of Ward's habeas petition, which explicitly states he is arguing that "The Bureau of Prisons (BOP) does not have a lawful order to collect restitution from the Petitioner while he is incarcerated.” By contrast, in this appeal, both parties agree that whether the sentencing court improperly delegated its scheduling authority to the BOP is one of the issues presented.

. Kinlock addressed a restitution order issued before Congress enacted the MVRA. But, as the Court of Appeals noted, the factors a court must consider in issuing a restitution order under the previous version of the statute and after the MVRA "are the same in either case.” Kinlock, 174 F.3d at 299 n. 2.

. The dissent also argues that the issue of what the sentencing court considered is not properly before us, and has been waived by the petitioner. Dissent at 1052-54. We disagree. The petition argues that the BOP does not have a lawful restitution order that gives it the authority to collect restitution from the petitioner. Whether the restitution order is lawful depends on whether or not the sentencing court that issued the order complied with the MVRA. The dissent’s approach of considering whether the restitution order complied with only some of the MVRA's requirements, such as specifying the manner of payment, see Dissent at 1055, but not others, such as whether the sentencing court set a payment schedule in consideration of the defendant’s financial position, seems to us inconsistent. 18 U.S.C. § 3664(0(2).

. The dissent argues that because petitioner failed to directly appeal his sentence and challenge the legality of the restitution order on that appeal, he has waived his right to make his argument — that the BOP lacks the ability to collect restitution payments because the restitution order is unlawful — through a section 2241 petition. Dissent at 1052-53. The Government, however, never raised this objection at either the district court or appellate court level, and any such procedural objection has been waived. See Trest v. Cain, 522 U.S. 87, 89, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997) (holding procedural default is a defense that state is obligated to raise, is waived by failure to assert, and is not jurisdictional requirement that must be considered sua sponte); Francis v. Rison, 894 F.2d 353, 355 (9th Cir.1990) (holding the Government waived procedural default defense that it failed to raise, despite the Government’s asserting failure to exhaust argument).